1  Joel E. Elkins (SBN 256020)
   jelkins@weisslawllp.com
2  **WEISSLAW LLP**
   9100 Wilshire Blvd. #725 E.
3  Beverly Hills, CA 90210
   Telephone: 310/208-2800
4  Facsimile:  310/209-2348

5  *Attorneys for Plaintiff*

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

10

11                                              :
                                                :
12 HAROLD LITWIN,                               :
                                                :   Case No._____
13               Plaintiff,                     :
                                                :
14                                              :
                                                :   **COMPLAINT FOR VIOLATIONS OF**
15       v.                                     :   **THE FEDERAL SECURITIES LAWS**
                                                :
16 THE MICHAELS COMPANIES, INC.,                :   JURY TRIAL DEMANDED
   JAMES A. QUELLA, JOSH BEKENSTEIN,            :
17 ASHLEY BUCHANAN, MARK S. COSBY,              :
   RYAN COTTON, MONTE E. FORD,                  :
18 KAREN KAPLAN, MATTHEW S. LEVIN,              :
   JOHN J. MAHONEY, and BERYL B. RAFF,          :
19                                              :
20               Defendants.                    :
                                                :
21

22       Plaintiff Harold Litwin ("Plaintiff"), by and through his undersigned counsel, for his

23 complaint against defendants, alleges upon personal knowledge with respect to himself, and upon

24 information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations

25 herein, as follows:

26

27                              **NATURE OF THE ACTION**

28                                         - 1 -
   COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1.      Plaintiff brings this action against The Michaels Companies, Inc. ("Michaels" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(e), 78t(a), and to enjoin the expiration of a tender offer (the "Tender Offer") on a proposed transaction, pursuant to which Michaels will be acquired by investment funds managed by affiliates of Apollo Global Management, Inc. ("Apollo"), through Magic AcquireCo, Inc. ("Parent") and Magic MergeCo, Inc. ("Purchaser") (the "Proposed Transaction").

2.      On March 3, 2021, Michaels and Apollo issued a joint press release announcing that they had entered into an Agreement and Plan of Merger (the "Merger Agreement") dated March 2, 2021, to sell Michaels to investment funds managed by Apollo. Under the terms of the Merger Agreement, Apollo will acquire all outstanding shares of Michaels for $22.00 in cash per share of Michaels common stock (the "Offer Price"). Pursuant to the Merger Agreement, Purchaser commenced the Tender Offer on March 16, 2021. The Tender Offer is scheduled to expire at one minute after 11:59 p.m., New York City Time, on Wednesday, April 12, 2021. The Proposed Transaction is valued at approximately $5 billion.

3.      On March 16, 2021, Michaels filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC. The Recommendation Statement, which recommends that Michaels' stockholders tender their shares in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's financial projections and the financial analyses supporting the fairness opinion provided by the Board's financial advisor, UBS Securities LLC ("UBS"); and (ii) potential conflicts of interest faced by Company insiders. Defendants authorized the issuance of the false and misleading Recommendation Statement in violation of Sections 14(e) and 20(a) of the Exchange

Act.

4. In short, the Proposed Transaction will unlawfully divest Michaels's public stockholders of the Company's valuable assets without fully disclosing all material information concerning the Proposed Transaction to Company stockholders. To remedy defendants' Exchange Act violations, Plaintiff seeks to enjoin the expiration of the Tender Offer unless and until such problems are remedied.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(e) and 20(a) of the Exchange Act pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Michaels maintains and operates several retail locations in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Michaels.

9. Defendant Michaels is a Delaware corporation with its principal executive offices located at 3939 West John Carpenter Freeway, Irving, Texas 75063. Michaels is North America's largest specialty provider of arts, crafts, framing, floral, wall décor, and seasonal merchandise for Michaels and do-it-yourself home decorators. Michaels maintains and operates several retail locations in this District. Michaels' common stock is traded on the NASDAQ Global Select Market under the ticker symbol "MIK."

10. Defendant James A. Quella ("Quella") has served as Chairman of the Board of the Company since April 2019 and a director since October 31, 2006.

11. Defendant Josh Bekenstein ("Bekenstein") has been a director of the Company since October 31, 2006.

12. Defendant Ashley Buchanan ("Buchanan") has served as President, Chief Executive Officer ("CEO"), and a director of the Company since January 6, 2020.

13. Defendant Mark S. Cosby ("Cosby") has been a director of the Company since February 28, 2019.

14. Defendant Ryan Cotton ("Cotton") has been a director of the Company since December 8, 2017.

15. Defendant Monte E. Ford ("Ford") has been a director of the Company since September 10, 2015.

16. Defendant Karen Kaplan ("Kaplan") has been a director of the Company since April 8, 2015.

17. Defendant Matthew S. Levin ("Levin") has been a director of the Company since October 31, 2006.

18. Defendant John J. Mahoney ("Mahoney") has been a director of the Company since September 18, 2013.

19.     Defendant Beryl B. Raff ("Raff") has been a director of the Company since September 23, 2014.

20.     Defendants identified in paragraphs 10 to 19 are collectively referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

21.     Apollo is a leading global investment manager with offices in New York, Los Angeles, San Diego, Houston, Bethesda, London, Frankfurt, Madrid, Luxembourg, Mumbai, Delhi, Singapore, Hong Kong, Shanghai and Tokyo, among others.  Apollo had assets under management of approximately $455 billion as of December 31, 2020 in credit, private equity and real assets funds.

22.     Parent is a Delaware corporation controlled by certain equity funds managed by Apollo Management IX, L.P.

23.     Purchaser is a Delaware corporation and wholly owned subsidiary of Parent.

**SUBSTANTIVE ALLEGATIONS**

**Company Background**

24.     With $5.3 billion in sales in fiscal 2020, Michaels is the largest arts and crafts specialty retailer in North America (based on store count) providing materials, project ideas and education for creative activities.  Its mission is to inspire and enable customer creativity, create a fun and rewarding place to work, foster meaningful connections with its communities and lead the industry in growth and innovation.  With crafting classes, store events, store displays, mobile applications and online videos, the Company offers an omnichannel shopping experience that can inspire creativity and build confidence in customers' artistic abilities.  As of January 30, 2021, the Company operated 1,252 Michaels retail stores in 49 states and Canada, with approximately 18,000 average square feet of selling space per store.

25. On March 4, 2021, the Company announced its fourth quarter and full year fiscal 2020 financial results, reporting for the quarter: Net Sales of $1.9 billion, up from $1.7 billion in the same period of the prior year; Operating Income of $342 million, up from $275 million in the same quarter of the prior year; Net Income of $255.1 million, up from $181.7 million in the corresponding quarter of 2019; and Diluted Earnings per Share of $1.72, improved from $1.24 in the prior year.

**The Proposed Transaction**

26. On March 3, 2021, Michaels and Apollo issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> IRVING, Texas & NEW YORK -- The Michaels Companies (NASDAQ: MIK) ("Michaels" or "the Company") and funds managed by affiliates of Apollo Global Management, Inc. (NYSE:APO) (together with its consolidated subsidiaries "Apollo") today announced that they have entered into a definitive merger agreement pursuant to which investment funds managed by affiliates of Apollo have agreed to acquire the Company in a transaction that values Michaels at an equity value of approximately $3.3 billion (for a transaction valued at $5.0 billion).
>
> Under the terms of the agreement, which has been unanimously approved by the Michaels Board of Directors, Apollo will commence a tender offer to acquire all outstanding shares of Michaels for $22.00 per share in cash. The purchase price represents a 47% premium to the closing stock price on February 26, 2021 (the last trading day prior to press speculation about a potential transaction involving Michaels) of $15.00 per share and a 78% premium to the 90-day volume-weighted average price.
>
> "The Company's impressive growth transformation, including our financial and operational performance in the unprecedented environment of the pandemic, led to an unsolicited offer to buy the company," said James Quella, Chairman of the Michaels Board of Directors. "Following that offer, the board undertook a comprehensive process to test the market and to evaluate the value maximizing path forward for shareholders. The Board of Directors, informed by that process, firmly believes Apollo's offer represents a compelling value to our shareholders. It has been a privilege to work with Ashley and the management team as they coalesced around the transformation strategy, reimagined the Michaels omni-channel experience, and drove strong business outcomes in a challenging retail environment."

"Our Michaels strategy and the work that we have done in the past year have led to phenomenal business results, strengthened our core business and positioned Michaels for long-term sustainable growth," said Ashley Buchanan, Chief Executive Officer of Michaels. "We are excited to enter into this new chapter together with Apollo, who shares our strategic vision for Michaels as an omnichannel retailer that offers a one-stop-shop experience for the entire Michaels community. As a private company, we will have financial flexibility to invest in, expand, and improve our retail and digital platforms."

Andrew S. Jhawar, Senior Partner and Head of the Retail and Consumer Group at Apollo, said, "On behalf of the Apollo Funds, we are delighted about this transaction with Michaels, which has continued to elevate its position as the leading player in the exciting arts and crafts industry. Michaels is the go-to-destination in arts and crafts for the deepest breadth of assortment with best-in-class customer service. We believe there is a significant opportunity to enhance the Michaels brand, store experience and omnichannel offering to its customers across North America. Our team at Apollo expects to leverage many of the strategies from our funds' successful investments in other specialty retailers and grocers with Michaels. We are looking forward to working with the management team and the over 45,000 team members at Michaels in further enhancing the Company's retail and digital channels as the most inspiring and engaging experience in the arts and crafts industry."

The closing of the transaction is subject to customary closing conditions, including the expiration or termination of certain regulatory periods and the tender of shares representing at least a majority of the Company's outstanding common stock to Apollo, and is expected to close in Michaels' first half of the Company's fiscal year. Following the successful completion of the tender offer, Apollo managed funds will acquire all remaining shares not tendered in the tender offer through a second-step merger at the same price. The transaction will be financed through a combination of equity provided by Apollo managed funds as well as a committed debt financing package to be provided by Credit Suisse, Barclays, Wells Fargo, RBC Capital Markets, Deutsche Bank, Mizuho, and Bank of America.

The merger agreement provides for a "go-shop" period, during which Michaels – with the assistance of UBS Investment Bank, its exclusive financial advisor – will actively solicit, evaluate and potentially enter into negotiations with and provide due diligence access to parties that submit alternative proposals. The go-shop period is 25 calendar days, commencing today. Michaels will have the right to terminate the merger agreement to enter into a superior proposal subject to the conditions and procedures specified in the merger agreement, which Michaels will file with a Current Report on Form 8-K. There can be no assurance this process will result in a superior proposal. Michaels does not intend to disclose developments about this process unless and until its Board of Directors has made a decision with respect to any potential superior proposal.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Upon the completion of the transaction, Michaels will become a privately held company and shares of MIK common stock will no longer be listed on any public market.

**Insiders' Interests in the Proposed Transaction**

28. Michaels' insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Michaels.

29. Notably, Company insiders stand to reap substantial financial benefits for securing the deal with Apollo. The following table sets forth the cash payments the Company's executive officers and directors will receive in connection with tendering their shares in the Tender Offer:

| Name of Executive Officer or Director | Number of Shares | Cash Consideration for Shares ($) |
|---|---|---|
| *Directors* | | |
| Josh Bekenstein | 0 | 0 |
| Ashley Buchanan(1) | N/A | N/A |
| Mark S. Cosby | 133,933 | 2,946,526 |
| Ryan Cotton | 0 | 0 |
| Monte E. Ford | 17,401 | 382,822 |
| Karen Kaplan | 29,637 | 652,014 |
| Matthew S. Levin | 15,905 | 349,910 |
| John J. Mahoney | 39,503 | 869,066 |
| James A. Quella | 32,690 | 719,180 |
| Beryl B. Raff | 41,063 | 903,386 |
| *Executive Officers* | | |
| Ashley Buchanan | 250,841 | 5,518,502 |
| Michael Diamond | 0 | 0 |
| Heather Bennett | 0 | 0 |
| Tim Cheatham | 0 | 0 |
| J. Robert Koch | 24,165 | 531,630 |
| James E. Sullivan | 49,890 | 1,097,580 |

30. Moreover, upon consummation of the Proposed Transaction, all vested and unvested Company options, restricted shares, restricted stock units ("RSUs"), performance-based restricted stock units ("PSUs"), and RSUs subject to both time and performance-based vesting conditions ("MSU") will be converted into the right to receive cash payments, as set forth in the following table:

| Name of Executive Officer or Director | Cash Consideration for Shares ($) | Cash Consideration for Stock Options ($) | Cash Consideration for Restricted Shares ($) | Cash Consideration for RSUs ($) | Cash Consideration for PSUs ($) | Cash Consideration for MSUs ($) | Total Cash Consideration in connection with the Offer and the Merger ($) |
|---|---|---|---|---|---|---|---|
| *Directors* | | | | | | | |
| Josh Bekenstein | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Ashley Buchanan(1) | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| Mark S. Cosby | 2,946,526 | 10,431,800 | 395,824 | 2,100,978 | 0 | 0 | 15,875,128 |
| Ryan Cotton | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Monte E. Ford | 382,822 | 0 | 0 | 337,700 | 0 | 0 | 720,522 |
| Karen Kaplan | 652,014 | 0 | 0 | 337,700 | 0 | 0 | 989,714 |
| Matthew S. Levin | 349,910 | 0 | 0 | 337,700 | 0 | 0 | 687,610 |
| John J. Mahoney | 869,066 | 0 | 0 | 337,700 | 0 | 0 | 1,206,766 |
| James A. Quella | 719,180 | 0 | 0 | 337,700 | 0 | 0 | 1,056,880 |
| Beryl B. Raff | 903,386 | 0 | 0 | 337,700 | 0 | 0 | 1,241,086 |
| *Executive Officers* | | | | | | | |
| Ashley Buchanan | 5,518,502 | 6,637,500 | 0 | 10,795,576 | 0 | 6,222,533 | 29,174,111 |
| Michael Diamond | 0 | 0 | 0 | 1,697,410 | 0 | 361,733 | 2,059,143 |
| Heather Bennett | 0 | 0 | 0 | 222,222 | 0 | 306,089 | 528,311 |
| Tim Cheatham | 0 | 0 | 0 | 222,222 | 0 | 306,089 | 528,311 |
| J. Robert Koch | 531,630 | 1,192,030 | 0 | 2,965,402 | 632,918 | 306,089 | 5,628,069 |
| James E. Sullivan | 1,097,580 | 276,460 | 0 | 1,771,088 | 316,448 | 186,444 | 3,648,020 |
| Joe Venezia | 0 | 0 | 0 | 222,222 | 0 | 306,089 | 528,311 |
| Hsaio Wang | 0 | 0 | 0 | 2,647,854 | 0 | 306,089 | 2,953,943 |
| Brynn Evanson | 0 | 0 | 0 | 826,430 | 0 | 306,089 | 1,132,519 |

31. Further, each long-term cash incentive award subject to vesting restrictions ("Company LTI Award") will vest and entitle Company insiders to receive the Merger Consideration, as set forth in the following table:

| Name of Executive Officer or Director | Company LTI Payment Amount ($) |
|---|---|
| *Directors* | |
| Josh Bekenstein | 0 |
| Ashley Buchanan | 0 |
| Mark S. Cosby | 0 |
| Ryan Cotton | 0 |
| Monte E. Ford | 64,650 |
| Karen Kaplan | 64,650 |
| Matthew S. Levin | 64,650 |
| John J. Mahoney | 64,650 |
| James A. Quella | 64,650 |
| Beryl B. Raff | 64,650 |
| *Executive Officers* | |
| Ashley Buchanan | 0 |
| Michael Diamond | 0 |
| Heather Bennett | 0 |
| Tim Cheatham | 550,000 |
| J. Robert Koch | 440,000 |
| James E. Sullivan | 268,000 |
| Joe Venezia | 0 |
| Hsaio Wang | 294,546 |
| Brynn Evanson | 0 |

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

32. In addition, if they are terminated in connection with the Proposed Transaction, Michaels' named executive officers will receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash ($)(1) | Equity ($)(2) | Perquisites/ Benefits ($)(3) | Other ($)(4) | Total ($) |
|---|---|---|---|---|---|
| Ashley Buchanan | 2,685,573 | 23,655,609 | 16,500 | 1,762,278 | 28,119,960 |
| Mark Cosby | 33,137 | 12,928,602 | 0 | 0 | 12,961,739 |
| Chuck Rubin | 0 | 0 | 0 | 0 | 0 |
| Michael Diamond | 729,710 | 2,059,143 | 16,500 | 0 | 2,805,353 |
| Denise Paulonis | 0 | 0 | 0 | 0 | 0 |
| Vidya Jwala | 0 | 0 | 0 | 0 | 0 |
| J. Robert Koch | 790,333 | 5,096,439 | 16,500 | 440,000 | 6,343,272 |
| Philo Pappas | 0 | 424,569 | 0 | 0 | 424,569 |

**The Recommendation Statement Contains Material Misstatements or Omissions**

33. Defendants filed a materially incomplete and misleading Recommendation Statement with the SEC and disseminated it to Michaels' stockholders. The Recommendation Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to tender their shares in favor of the Proposed Transaction or seek appraisal.

34. Specifically, as set forth below, the Recommendation Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's financial projections and the financial analyses supporting the fairness opinion provided by the Board's financial advisor, UBS; and (ii) potential conflicts of interest faced by Company insiders.

*Material Omissions Concerning the Company's Financial Projections and UBS' Financial Analyses*

35. The Recommendation Statement omits material information regarding the Company's financial projections.

36. For example, the Recommendation Statement fails to disclose the line items underlying the following financial metrics: (i) Reported EBITDA; (ii) Adjusted EBITDA; and (iii) Normalized EBITDA.

37. The Recommendation Statement also omits material information regarding UBS' financial analyses.

38. The Recommendation Statement describes UBS' fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of UBS' fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Michaels' public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on UBS' fairness opinion in determining whether to tender their shares in favor of the Proposed Transaction or seek appraisal.

39. With respect to UBS' *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rates ranging from 9.0% to 11.0%; (ii) UBS' rationale for utilizing terminal multiples of 6.0x to 7.5x; (iii) quantification of the terminal values for the Company as of the 2025 fiscal year; (iv) the discount rates used to discount the equity value to present value as of January 30, 2021; (v) the net debt figure used in the analysis; (vi) the diluted share information utilized in the analysis; and (vii) whether the implied per share reference range applies to the estimated terminal value and the projected cash flows discounted to present value as of April 30, 2021, using the net debt and diluted share information; or the equity value discounted to present value as of January 30, 2021, using the net debt and diluted share information;

40. Without such undisclosed information, Michaels' stockholders cannot evaluate for themselves whether the financial analyses performed by UBS were based on reliable inputs and

assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which UBS' opinion and analyses should factor into their decision whether to tender their shares in favor of or against the Proposed Transaction or seek appraisal.

41. The omission of this information renders the statements in the "Certain Company Management Forecasts" and "Opinion of the Financial Advisor to the Company Board" sections of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Company Insiders' Potential Conflicts of Interest***

42. The Recommendation Statement fails to disclose material information concerning the potential conflicts of interest faced by Company insiders.

43. For example, in the press release announcing the Proposed Transaction, Andrew S. Jhawar, Senior Partner and Head of the Retail and Consumer Group at Apollo, stated:

> On behalf of the Apollo Funds, we are delighted about this transaction with Michaels, which has continued to elevate its position as the leading player in the exciting arts and crafts industry. Michaels is the go-to-destination in arts and crafts for the deepest breadth of assortment with best-in-class customer service. We believe there is a significant opportunity to enhance the Michaels brand, store experience and omnichannel offering to its customers across North America. Our team at Apollo expects to leverage many of the strategies from our funds' successful investments in other specialty retailers and grocers with Michaels. ***We are looking forward to working with the management team*** and the over 45,000 team members at Michaels in further enhancing the Company's retail and digital channels as the most inspiring and engaging experience in the arts and crafts industry.

Emphasis added.

44. The Recommendation Statement fails, however, to disclose the identities of Michaels' executive officers or directors that have secured employment with the Company post-close as well as the details of any retention-related discussions and negotiations that occurred

between Apollo and Michaels executive officers, including who participated in all such communications, when they occurred and their content. The Recommendation Statement further fails to disclose whether any of Apollo's proposals or indications of interest mentioned management retention or participation in the Company post-close.

45. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Michaels' stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

46. The omission of this information renders the statements in the "Background and Reasons for the Company Board's Recommendation" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

47. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Recommendation Statement. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other Michaels stockholders will be unable to make an informed decision whether to tender their shares in the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**COUNT I**

**Claims Against All Defendants for Violations
of Section 14(e) of the Exchange Act**

48.    Plaintiff repeats all previous allegations as if set forth in full.

49.    Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Tender Offer commenced in conjunction with the Proposed Transaction.

50.    Defendants knew that Plaintiff would rely upon their statements in the Recommendation Statement in determining whether to tender his shares pursuant to the Tender Offer commenced in conjunction with the Proposed Transaction.

51.    As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender his shares.

**COUNT II**

**Claims Against the Individual Defendants for
Violation of Section 20(a) of the Exchange Act**

52.    Plaintiff repeats all previous allegations as if set forth in full.

53.    The Individual Defendants acted as controlling persons of Michaels within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers or directors of Michaels and participation in or awareness of the Company's operations or

intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

54. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

56. In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Recommendation Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

57. By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Michaels, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: March 24, 2021              **WEISSLAW LLP**

By: /s/ Joel E. Elkins

Joel E. Elkins
9100 Wilshire Blvd. #725 E.
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348
    -and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: 212/682-3025
Facsimile: 212/682-3010

*Attorneys for Plaintiff*